UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEDGWICK INSURANCE
and ANGELA SARAZIN,

        Plaintiffs,        Civil Action No. 13-10485
                                      Honorable Paul D. Borman
                                      Magistrate Judge David R. Grand

v.

CDS, INC. and F.A.B.E. CUSTOM
DOWNSTREAM SYSTEMS, INC.,

        Defendants.
_____/

**ORDER DENYING PLAINTIFF'S MOTION TO DISMISS AND/OR
TO STRIKE DEFENDANT F.A.B.E. CUSTOM DOWNSTREAM
SYSTEMS, INC.'S NOTICE OF NON-PARTY FAULT [35]**

On January 21, 2014, Plaintiff Angela Sarazin ("Sarazin") filed a Motion to Dismiss and/or to Strike Defendant F.A.B.E. Custom Downstream Systems, Inc.'s ("CDS") Notice of Non-Party Fault. (Doc. #35). CDS filed a response to this motion on February 11, 2014 (Doc. #38), and Sarazin filed a reply on February 17, 2014 (Doc. #39). An Order of Reference was entered on January 23, 2014, referring Sarazin's motion to the undersigned for a hearing and determination pursuant to 28 U.S.C. §636(b)(1)(A). (Doc. #36).

      A.    **Background**

This is a product liability/tort action arising out of an injury suffered by Sarazin while working as a contract employee (through Manpower, a temporary staffing agency) on the assembly line at Fagerdala USA-Marysville, Inc. ("Fagerdala"). The parties do not dispute that, for legal purposes, Fagerdala is considered Sarazin's employer. Fagerdala produces a variety of products, including foam pool flotation "noodles." (Doc. #1 at ¶8). Sarazin alleges that, on

February 24, 2010, while cleaning up before going home, she noticed two pool noodles stuck in a Servo Fly-Knife Cutter, a machine designed, manufactured, and sold by CDS. (*Id.* at ¶¶12, 13). Believing that the machines were off/down, Sarazin reached into the machine to remove the pool noodles. Sarazin alleges that, because of the absence of various safety measures, the machine started and her right hand was completely severed. (*Id.* at ¶¶15, 16).

On February 7, 2013, Sarazin filed a tort action against CDS, the designer, manufacturer, and seller of the Servo Fly-Knife Cutter machine, which was assigned Case No. 13-10492.[1] (Doc. #1). CDS filed its answer and affirmative defenses on April 29, 2013. (Doc. #8). Included in CDS' affirmative defenses were the following:

>   2.  There was superseding and intervening conduct, negligence, and acts of others, which were the proximate cause of the accident at issue.
>
>   * * *
>
>   15. The product may have been altered by Fagerdala, after the machine was installed. As such Defendant has no liability.
>
>   * * *
>
>   30. The Plaintiff's employer, Fagerdala USA, and/or supervisor was wholly or partially responsible for Plaintiff's injuries.
>
>   * * *
>
>   32. That the machine was negligently maintained by Plaintiff's employer, Fagerdala USA.
>
>   * * *
>
>   35. Fagerdala USA failed to request to install optional tubular pipes on each side of the blade safety guard, an additional safety feature.
>
>   36. That when the machine left CDS, the stainless steel brushings on each side

---

[1] Sedgwick Insurance ("Sedgwick"), the worker's compensation carrier paying Sarazin's benefits, had filed suit against CDS a day earlier, on February 6, 2013. (Case No. 13-10485). The two actions were later consolidated into the first-filed action, No. 13-10485. (Doc. #6).

> of the blade housing were not opened. The opening was done by the customer (Fagerdala), according to the size of the material that would be pushed through the brushings to be cut.

(*Id.* at 8-11).

On June 14, 2013, CDS filed a notice of nonparty fault (the "Notice") naming Fagerdala and "John Doe, the plant manager" as nonparties at fault pursuant to MCL 600.2957 and MCR 2.112(K). (Case No. 13-10492, Doc. #11). Specifically, CDS asserted:

> <u>Basis of Fault</u>: Refer to Plaintiff's Complaint. If plaintiff's theories are accepted as true for the purposes of this Notice only, without admission of any claim or waiver of any defense, Defendant asserts the fault of Fagerdala USA-Marysville Inc. and John Doe, the plant manager, whose acts, omissions, or breaches of duty are a cause, contributing cause, or sole cause of damages claimed by the Plaintiff.

(*Id.*).

Discovery then apparently proceeded without incident, though, as indicated in CDS' discovery plan, it anticipated that discovery would "involve[] depositions of numerous witnesses who the parties are attempting to track down, due to the fact that plaintiff's former employer is no longer in business." (Doc. #24 at 2). Apparently, during those depositions, CDS received some (though still imperfect) information about the "John Doe" plant manager's identity. (Doc. #38 at 22). It also discovered more details about its previously stated affirmative defenses. As CDS explains in its opposition to Sarazin's instant motion, it now alleges that Fagerdala and its plant manager were at fault for Sarazin's injury because CDS offered a 36-inch guard for the Servo Fly-Knife Cutter machine, but Fagerdala declined to purchase it. (*Id.* at 14). CDS also asserts that Fagerdala modified the machine, installing a 12-inch guard, which was too small. (*Id.*). CDS did not, however, amend its Notice in any respect.

On January 21, 2014, Sarazin filed the instant motion to strike and/or to dismiss CDS' Notice. (Doc. #35). In her motion, Sarazin argues that CDS' Notice must be stricken pursuant

to FRCP 12(f) because it is insufficient under Michigan law.[2] Sarazin further argues that CDS' Notice should be dismissed pursuant to FRCP 12(b)(6) because Michigan law purportedly "recognizes that fault cannot be apportioned to Fagerdala, or a co-employee, because they were subject to the Worker's Compensation Disability Act and therefore owed her no duty." (*Id.* at 12). These arguments will be addressed in turn.

**B. Analysis**

*1. Adequacy of the Notice*

The parties agree that MCR 2.112(K), entitled "Fault of Nonparties; Notice," is applicable as substantive law and, thus, must be applied by this federal court sitting in diversity jurisdiction. *See Beverage Distributors, Inc. v. Miller Brewing Co.*, 690 F.3d 788, 792 (6th Cir. 2012). As the Sixth Circuit has explained:

> In this case, jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1). Accordingly, we apply state law as decided by the Michigan Supreme Court. If the Michigan Supreme Court has not yet addressed the issue presented, we must predict how it would rule, by looking to "all relevant data," including state appellate decisions. "[I]n all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court."

*Kessler v. Visteon Corp.*, 448 F.3d 326, 329-30 (6th Cir. 2006) (internal citations omitted).

MCR 2.112(K)(3)(a) provides that "[a] party against whom a claim is asserted may give

---

[2] Sarazin's motion seems procedurally improper under FRCP 12(f) because that rule provides only for the striking of "pleadings" as defined by FRCP 7(a), and CDS' notice of nonparty fault is not such a "pleading." *See* FRCP 7(a). *See also Design Basics, LLC v. Chelsea Lumber Co.*, 2013 WL 3471142, at *1 (E.D. Mich. July 10, 2013) ("…Rule 12(f) is not the proper vehicle for Plaintiff's challenge to Defendants' notice of non-party fault…the notice of non-party fault is best characterized as providing notice to the court of a factual issue…the Court concludes that Plaintiff's motion to strike is best construed as a motion in limine seeking to prevent Defendants from raising certain evidence or arguments at trial.").

notice of a claim that a nonparty is wholly or partially at fault." In turn, MCR 2.112(K)(3)(b) and (c) provide the requisite contents and timing of such a notice:

> (b) The notice shall designate the nonparty and set forth the nonparty's name and last known address, or the best identification of the nonparty that is possible, together with a brief statement of the basis for believing the nonparty is at fault.
>
> (c) The notice must be filed within 91 days after the party files its first responsive pleading. On motion, the court shall allow a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.

The Court finds that CDS' Notice, filed well within the 91-day requirement, satisfied MCR 2.112(K)(3)'s requirements. First, Sarazin does not dispute that CDS properly identified her former employer, "Fagerdala USA-Marysville, Inc." (Case No. 13-10492, Doc. #11 at 1-2). Rather, in terms of the identification component, she only challenges the Notice insofar as it allegedly "fails to sufficiently identify the manager that is being asserted as being at fault." (Doc. #35 at 15). Sarazin asserts that, rather than simply identifying the manager as "John Doe (plant manager)," CDS "could have and should have identified the 'manager' at issue by identifying what dates this manager worked and/or what actions this manager is alleged to have taken which renders him at fault." (*Id.*). This argument lacks merit.

Michigan courts allow a party to name unknown persons in a notice of nonparty fault. *See Rinke v. Potrzebowski*, 254 Mich. App. 411, 414 (2002). As was made clear at oral argument, it is undisputed that CDS did not have actual knowledge of the plant manager's name until it deposed certain Fagerdala employees, and even then received only imperfect information. Sarazin's counsel asserted that he had obtained the plant manager's full name months earlier by serving a FOIA request for the OSHA reports related to Sarazin's injury. Sarazin argued that

5

because its counsel was able to obtain the manager's name prior to the depositions, CDS' failure to do so shows it did not act with "reasonable diligence." But Sarazin offered no case law to suggest that the statute's "reasonable diligence" requirement mandates that a lawyer use any and all means necessary to obtain the nonparty at fault's identity as soon as possible. The Court finds that CDS' timely use of traditional litigation discovery techniques, such as taking depositions, suffices.[3]

Sarazin also argues that CDS' Notice is inadequate because it "fails to set forth any basis for [CDS'] belief that these non-parties were at fault," and constitutes nothing more than "*ipse dixit*." But this is not true. Particularly considering CDS' affirmative defenses, which it served months earlier, its Notice provides the "brief statement of the basis for believing the nonparty is at fault" that the statute requires.[4]

Other considerations also favor denying Sarazin's instant motion. Although counsel for CDS conceded at oral argument that he should have amended the Notice after he obtained better information during the August 2013 depositions, Sarazin's counsel was represented during those depositions and became aware of the information at that time. In fact, Sarazin's counsel conceded at oral argument that he could not point to any prejudice suffered as a result of CDS' failure to have amended its Notice. To that end, the Court also notes that CDS filed its Notice on June 14, 2013, and Sarazin did not file the instant motion until January 21, 2014, more than seven months later. If Sarazin legitimately believed that she could not determine the identity of the named nonparties at fault, or understand the basis for CDS' assertion of nonparty fault, it

---

[3] The Court also notes that learning the manager's full name was slowed "due to the fact that plaintiff's former employer is no longer in business." (Doc. #24 at 2). And, given principles of *respondeat superior*, it is unclear whether naming the plant manager separately from Fagerdala has any practical significance here.

[4] Sarazin has not cited a single case interpreting the "brief statement" requirement.

stands to reason that she would have acted much sooner. The fact that she did not do so (and her admission that CDS' Notice has not prejudiced her) supports CDS' assertion that its Notice was timely and sufficient.

In light of this Court's findings above that CDS acted with reasonable diligence, and given Sarazin's admission that she has suffered no prejudice as a result of the timing and contents of CDS' Notice, it would make no sense to strike CDS' Notice only to have it move to file an amended one. *See* MCR 2.112(k)(3)(c) (allowing "a later filing of the notice on a showing that the facts on which the notice is based were not and could not with reasonable diligence have been known to the moving party earlier, provided that the late filing of the notice does not result in unfair prejudice to the opposing party.").

### 2. *Propriety of Naming Sarazin's Employer as a Nonparty at Fault*

Sarazin also argues that, under Michigan law, neither an employer nor a co-employee can be named as a nonparty at fault. (Doc. #35 at 16-19). The comparative fault statutes provide that in a tort action for personal injury, the trier of fact must allocate liability among all persons found to have been at fault, "regardless of whether the person is, or could have been, named as a party to the action." MCL §600.2957(1). MCL §600.2957(3) further provides that the statutes:

> … do not eliminate or diminish a defense or immunity that currently exists, except as expressly provided …. Assessments of percentages of fault for nonparties are used only to accurately determine the fault of named parties. If fault is assessed against a nonparty, a finding of fault does not subject the nonparty to liability in that action and shall not be introduced as evidence of liability in another action.

MCL §600.2957 references MCL §600.6304, which provides, in relevant part, that in determining the proper percentage of fault, the trier of fact is required to consider the total fault of all persons that contributed to the death or injury, "regardless of whether the person was or could have been named as a party to the action." MCL §600.6304(1)(b). "Fault" is defined as

"an act, an omission, conduct, including intentional conduct, a breach of warranty, or a breach of a legal duty, or any conduct that could give rise to the imposition of strict liability, that is a proximate cause of damage sustained by a party." MCL §600.6304(8). Interpreting these statutory provisions, the Michigan Supreme Court has held that "proof of a duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes, MCL 600.2957 and MCL 600.6304." *Romain v. Frankenmuth Mut. Ins. Co.*, 483 Mich. 18, 21 (2009) (emphasis in original).

The parties agree on these principles of law; it is from here, however, that their positions diverge. Sarazin argues that, under Michigan law, an entity subject to the Worker's Disability Compensation Act's ("WDCA") exclusive remedy provision cannot be named as a nonparty at fault. (Doc. #35 at 16-19). In support of her argument, Sarazin relies on two Michigan cases, *Kopp v. Zigich*, 268 Mich. App. 258 (2005), and *Romain*, *supra*. In *Kopp*, the plaintiff was injured while delivering a hot tub for his employer. He sued the owners of the residence based on premises liability, alleging negligence in maintaining their residence and in not warning him of known dangers. The defendant filed a notice, identifying the plaintiff's employer as a nonparty at fault and alleging that the employer had failed to properly train the plaintiff in the delivery of hot tubs. The plaintiff moved to strike the notice, and the trial court granted the motion, reasoning that a duty must exist before fault can be apportioned under the comparative fault statutes, and finding that plaintiff's employer did not owe him a duty because plaintiff's exclusive remedy against his employer was under the WDCA.

The Court of Appeals disagreed, holding that under a plain reading of the comparative fault statutes, a court is required to award damages based on a proportional determination of a defendant's fault in relation to the plaintiff's total damages caused by all persons who

contributed to the injury.  *Kopp*, 268 Mich. App. at 260.  Accordingly, the Court of Appeals held that the defendant "must have the opportunity to name [the plaintiff's employer] as a potential nonparty at fault and present evidence that [the employer] contributed to plaintiff's injuries."  *Id*.  The Court of Appeals then stated that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated."  *Id.*

As Sarazin points out, the Michigan Supreme Court at least partially overruled *Kopp* in *Romain*, stating:  "Specifically, we overrule the statement in *Kopp v. Zigich* that 'a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated.'"  *Romain*, 483 Mich. at 20.  Instead, the *Romain* court held that "proof of a duty *is* required 'before fault can be apportioned and liability allocated' under the comparative fault statutes, MCL 600.2957 and MCL 600.6304."  *Id.* at 21.  Although the parties appear to agree that *Kopp* and *Romain* are instructive, each party argues that these cases, read together, support its position.

Sarazin asserts that, "The proposition that an employer cannot be named as a non-party at fault is implicit within the Court's rulings in *Romain* and *Kopp*."  (Doc. #35 at 18).  Specifically, Sarazin claims that "the Supreme Court's decision in *Romain* to overrule only *Kopp's* determination that duty was not required, essentially leaves the holding that an employer cannot be named as a non-party at fault as the only remaining viable principle that can be derived from *Kopp*."  (*Id.*).  In contrast, CDS argues that the Supreme Court in *Romain* stated very clearly that it was overruling only one statement in *Kopp*, namely the statement that "a plain reading of the comparative fault statutes does not require proof of a duty before fault can be apportioned and liability allocated." (Doc. #38 at 18).  Therefore, asserts CDS, *Kopp* is still binding authority for the portion of its holding that, under MCL §600.2957 and §600.6304, a party may still be named

as a nonparty for purposes of assessing fault, even if that party may not be sued, so long as there is proof that the nonparty owed the plaintiff a duty. (*Id.*).

In support of its argument, CDS relies on *Richardson v. Time Mfg.*, 2005 WL 1923592 (W.D. Mich. Aug. 11, 2005), and *Schmeling v. Whitty*, 2011 WL 520539 (Mich. Ct. App. Feb. 15, 2011). (Doc. #38 at 17-20). Sarazin correctly points out that both of these cases are unpublished and, thus, not binding on this Court. However, both cases squarely address the issue at hand, and the Court finds their conclusions well-reasoned.

In *Richardson*, which was decided before *Kopp*, the court noted that because "fault" is statutorily defined to include both intentional conduct and conduct which could give rise to strict liability, "the statute implicitly includes – as non-parties who may be assigned 'fault' – employers whose acts, omissions, or conduct have proximately caused a claimed injury." *Richardson*, 2005 WL 1923592, at 3-4.

Similarly, in *Schmeling*, the Michigan Court of Appeals considered the plaintiff's motion to strike the defendant's notice of nonparty fault, which named the plaintiff's employer and co-worker. *Schmeling*, 2011 WL 520539, at *1. The court cited *Romain* for the proposition that before a person can be named as a nonparty at fault, it must first be shown the person owed a duty to the plaintiff. *Id.* The *Schmeling* court then stated:

> The existence of a duty turns on the relationship between the defendant and the person whose injury was allegedly caused by the defendant's act or failure to act. Essentially, the question of duty is a public-policy question of whether the defendant should be held responsible for the conduct or inaction in question. Although workers' compensation benefits are the exclusive *remedy* for an employee injured while working, it does not follow that employers and coemployees do not owe an employee any duty.
>
> \*   \*   \*
>
> A duty encompasses the type of behavior that the person in question must engage in, or refrain from, in order to avoid legal liability. A remedy,

10

> however, refers to the kind of relief a claimant may obtain, once the claimant has shown a breach of some duty. Critically, MCL 600.2957(1) and MCL 600.2304(1)(b) recognize this distinction by explicitly providing that a defendant can notice a nonparty at fault even though that nonparty could not be sued. In other words, a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person. We therefore conclude that the trial court erred as a matter of law by granting plaintiff's motion to strike defendants' notice of nonparty fault.

*Id.* at *1-2.

The Court finds the reasoning of the *Richardson* and *Schmeling* courts, as well as CDS' interpretation of *Kopp* and *Romain*, to be persuasive. It simply does not follow that, because employers are subject to the WDCA, they do not owe their employees a duty, as Sarazin suggests.[5] Rather, as CDS argues, the Court believes that Michigan employers owe duties to their employees, grounded in both statutory and common law, including, for example, to provide safe workplaces, free from hazards that likely will cause serious physical harm. *See, e.g.,* MCL §408.1011(a); *Villar v. E.W. Bliss*, 134 Mich. App. 116 (1984) (citing cases)). As the *Schmeling* court recognized, "a person *can* owe a duty to a plaintiff even when the plaintiff cannot recover any remedy from that person." *Id.* at *2. Moreover, the Court finds this interpretation to be consistent with the comparative fault statute's provision that requires the trier of fact to allocate liability among all persons found to have been at fault, "regardless of whether the person is, or could have been, named as a party to the action." MCL §600.2957(1).

Because Fagerdala, as Sarazin's employer, had a duty to maintain a reasonably safe workplace, CDS could properly name Fagerdala and its plant manager as nonparties at fault in this product liability/tort action. *See Romain*, 483 Mich. at 20; *Schmeling*, 2011 WL 520539 at

---

[5] Specifically, Sarazin argues that "an employer subject to Worker's Compensation owes no duty" because "duty" is defined as "conduct that an individual must take to avoid becoming subject to liability to another for injuries sustained." (Doc. #35 at 18-19 (citing Restatement Second of Torts, §4)). According to Sarazin, because "there are no actions that an employer can take to avoid liability for Worker's Compensation Damages," it follows then that, by definition, there can be no duty. The Court simply is not persuaded by this reasoning.

11

*1-2; *Richardson*, 2005 WL 1923592, at *2-4.

For all of the above reasons, **IT IS ORDERED** that Plaintiff's Motion to Dismiss and/or to Strike Defendant CDS' Notice of Non-Party Fault **(Doc. #35)** is **DENIED**.

Dated: March 25, 2014      s/David R. Grand
Ann Arbor, Michigan      DAVID R. GRAND
    United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 25, 2014.

    s/Felicia M. Moses
    FELICIA M. MOSES
    Case Manager